UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE TAYLOR,

    Plaintiff,                              Hon. Ellen S. Carmody

v.                                           Case No. 1:16-CV-679

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. (ECF No. 14). Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years of age on her alleged disability onset date. (PageID.225). She successfully completed college and last worked as a secretary and dental assistant. (PageID.61, 154). Plaintiff applied for benefits on November 21, 2013, alleging that she had been disabled since November 4, 2007, due to lupus, ADHD, C3-C4 fusion, closed head injury, PTSD, and memory issues. (PageID.225-34, 313). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.91-222). On August 26, 2014, Plaintiff appeared before ALJ Richard Guida with testimony being offered by Plaintiff and a vocational expert. (PageID.51-89). In a written decision dated February 11, 2015, the ALJ determined that Plaintiff was not disabled. (PageID.140-56). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (PageID.41-43). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2009. (PageID.142). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

Treatment notes dated October 11, 2006, indicate that in light of conflicting laboratory test results there existed a "question" whether Plaintiff was properly diagnosed with lupus. (PageID.418). The results of an anti-nuclear antibodies (ANA) tests[1] performed in December 2006 and January 2008, were both negative. (PageID.413, 417).

On November 4, 2007, Plaintiff was riding on a pontoon boat when she "dove into the shallow water. . .hitting her head on the bottom." (PageID.478). Plaintiff suffered a "mild brain injury" as well as a fracture at C4-5 which necessitated fusion surgery. (PageID.471, 583, 585-86, 593-98). Treatment notes dated February 6, 2008, indicate that Plaintiff was "doing very well" with "very little pain." (PageID.646). Treatment notes dated March 18, 2008, indicate that Plaintiff was neurologically intact. (PageID480). Treatment notes dated April 17, 2008, note "embellishment" by Plaintiff "in multiple areas of functioning." (PageID.471). A May 6, 2008 examination revealed "no evidence of traumatic brain injury in [Plaintiff's] case." (PageID.465).

X-rays of Plaintiff's cervical spine, taken on May 7, 2008, revealed "no evidence of instability." (PageID.656). Plaintiff was doing "extremely well" and was instructed that she "can return to normal activity." (PageID.645). The results of an October 21, 2010 physical examination were unremarkable. (PageID.693-94).On November 2, 2010, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed "no acute abnormalities." (PageID.655). Treatment notes dated April 27, 2011, revealed no evidence that Plaintiff was experiencing cognitive or motor delay. (PageID.807).

---

[1] An anti-nuclear antibody (ANA) test measures whether the body's immune system is attacking the body's normal tissues, a characteristic of auto-immune disorders. *See* Antinuclear Antibodies (ANA), available at http://www.webmd.com/arthritis/antinuclear-antibodies-ana#1 (last visited on June 30, 2017). An ANA test is used to determine if an individual is suffering from autoimmune disorders such as rheumatoid arthritis or lupus. *Id.*

Treatment notes dated August 3, 2012, reveal that Plaintiff was employed as a substitute teacher during the 2011-2012 school year. (PageID.986). Plaintiff's intellectual functioning was characterized as "above average." (PageID.989). On December 11, 2012, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed "moderate" disc degeneration at C5-6, but was otherwise "normal" with no evidence of spinal cord or nerve root compression. (PageID.842).

On November 1, 2013, Plaintiff reported that she was experiencing "a flareup of her lupus," but when Plaintiff was asked "what symptoms she was having that would suggest a flare up of lupus [Plaintiff] really could not answer that question." (PageID.877). The doctor reported that Plaintiff "really has no symptoms that would [at] all suggest anything to do with lupus." (PageID.877).

Treatment notes dated February 3, 2014, indicate that Plaintiff's complaints are exaggerated and that she is instead "qualified and capable in several areas." (PageID.1047-53). Treatment notes dated February 11, 2014, indicate that Plaintiff was instructed to exercise five days weekly. (PageID.1019). The results of a May 15, 2014 ANA test were "equivocally positive." (PageID.1233). On June 27, 2014, Plaintiff participated in a functional capacity assessment at Mary Free Bed the results of which were consistent with the ALJ's RFC assessment. (PageID.1082-85). The results of a July 17, 2014 physical examination were unremarkable and revealed that Plaintiff's spine "looks pretty good." (PageID.1215-16).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease; (2) lupus; (3) anxiety disorder; (4) attention deficit hyperactivity disorder (ADHD); (5) personality disorder; (6) post-traumatic stress disorder (PTSD); and (7) major depressive disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.143-48).

With respect to Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform light work subject to the following limitations: (1) she can only occasionally crawl, and climb ladders, ropes, and scaffolds; (2) she is limited to unskilled work with simple, routine, and repetitive tasks, involving only simple, work-related decisions, with few, if any, work place changes; and (3) she can have only occasional interaction with supervisors, co-workers, and the public. (PageID.148).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 249,000 in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.84-85). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were limited to sedentary work, with the same additional limitations, there still existed approximately 159,000 in the national economy which Plaintiff could perform consistent with her RFC. (PageID.85-86). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.   **The ALJ Properly Evaluated the Opinion Evidence**

On August 21, 2014, Dr. Rick Saier offered the opinion that Plaintiff was limited to an extent greater than that recognized by the ALJ. (PageID.1093-97). The ALJ afforded "little weight" to Dr. Saier's opinion. (PageID.152-53). Plaintiff argues that she is entitled to relief on the ground that the ALJ failed to articulate sufficient reasons for discounting the opinion of her treating physician.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her

medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the

physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

While much of Dr. Saier's opinion is consistent with the ALJ's RFC assessment, it differs in several respects. Specifically, the doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for only "about 2 hours" each. (PageID.1095). The doctor reported that Plaintiff can perform reaching, handling, and fingering activities for only 30-50 percent of the workday. (PageID.1096). The doctor also reported that Plaintiff would likely be absent from work "about three days per month" as a result of her impairments. (PageID.1097).

As the ALJ accurately observed, Dr. Saier's contemporaneous treatment notes "contain no objective signs and findings to support his opinion." (PageID.1117-21, 1217-53). The ALJ also accurately noted that Dr. Saier's opinion was contradicted by the "absence of radiologic abnormalities." (PageID.593-98, 655-63, 697, 842, 1213-14). Finally, as the ALJ observed and the

evidence discussed above reveals, the findings and conclusions of other medical professionals simply do not support Dr. Saier's opinions. In sum, the ALJ's rationale for discounting Dr. Saier's opinions is supported by substantial evidence. Accordingly, this argument is rejected.

**II.        Plaintiff does not Satisfy Section 14.02 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Specifically, Plaintiff argues that she satisfies Listing 14.02 regarding systemic lupus erythematosus (SLE). With respect to SLE, the Listing of Impairments provides:

> 1. Systemic lupus erythematosus (14.02).
>
> a. General. Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis). Immunologically, there is an array of circulating serum auto-antibodies and pro– and anti-coagulant proteins that may occur in a highly variable pattern.
>
> b. Documentation of SLE. Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the

11

most recent edition of the Primer on the Rheumatic
Diseases published by the Arthritis Foundation.[3]

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.00(D)(1).

More specifically, to satisfy this particular Listing a claimant must establish the following:

    A.    Involvement of two or more organs/body systems, with:

        1.    One of the organs/body systems involved to at least a moderate level of severity; and

        2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

    or

    B.    Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

        1.    Limitation of activities of daily living.

        2.    Limitation in maintaining social functioning.

        3.    Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.00(J)(3).

---

[3] The ALJ stated that this standard "include[s] 11 criteria, four of which must be present to make a positive diagnosis." (PageID.144). Neither party disputes the accuracy of this conclusion.

12

Plaintiff asserts that she satisfies the requires of § 14.02(A). The ALJ found that while Plaintiff satisfied the requirements of subsection (A)(1), she did not satisfy subsection (A)(2). Specifically, the ALJ found that Plaintiff experienced only one of the listed "constitutional symptoms or signs," severe fatigue. Plaintiff argues that she also experienced fever, thus satisfying the Listing's requirements. The Court is not persuaded.

To satisfy this particular aspect of the Listing, Plaintiff must demonstrate that she experienced fever to a significant degree for more than a transitory length of time. *See, e.g., Sanders o.b.o. K.S. v. Commissioner of Social Security*, 2017 WL 955401 at *6 (N.D. Ind., Mar. 13, 2017) ("fevers are not defined by the listing, but courts have found that listing-level severity was not met where the claimant suffered from only periodic fevers and did not suffer from fevers to an extreme degree or for any prolonged period [of] time"); *Osborn v. Astrue*, 2010 WL 3769112 at *8 (S.D. Ohio, Aug. 19, 2010) ("the Listing requires that Plaintiff show documented constitutional symptoms of severe fatigue, fever, malaise, and weight loss"). Furthermore, Plaintiff bears the burden to demonstrate that she satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002).

The ALJ observed that Plaintiff "reported experiencing fevers on a few occasions throughout seven years of medical records." (PageID.145). This is consistent with the observations of Plaintiff's treating physician, Dr. Saier, who reported that Plaintiff only periodically experienced fevers. (PageID.1094). Plaintiff has failed to identify any evidence that she experienced fevers with the frequency and severity necessary to satisfy the Listing. On the other hand, the record is replete with notations that Plaintiff was not experiencing a fever. (PageID.465, 480, 545, 577, 613, 730,

13

753, 900, 909). The Court concludes, therefore, that Plaintiff has failed to satisfy her burden that she meets the requirements of the Listing in question.

**III.     The ALJ's Step Five Determination is Supported by Substantial Evidence**

As previously noted, the ALJ questioned a vocational expert at the administrative hearing to determine whether there existed a significant number of jobs which Plaintiff could perform consistent with her RFC. In responding to the ALJ's hypothetical questions, the vocational expert, relying on the Dictionary of Occupational Titles (DOT), identified several jobs which Plaintiff would be able to perform. (PageID.84-86). However, in estimating the number of such jobs which existed, the vocational expert relied on the Bureau of Labor Statistics' Standard Occupational Classification (SOC). (PageID.86-87). The vocational expert testified that the DOT codes are a "subset" of the SOC codes. (PageID.87).

Plaintiff contends that because the DOT codes are a "subset" of the SOC codes, the vocational expert's reliance on the latter to estimate the number of jobs which she could still perform resulted in an inaccurate overestimation of how many such jobs existed. Stated differently, Plaintiff argues that because there does not exist perfect symmetry between the categories of jobs identified in the DOT and SOC it was improper for the ALJ to rely on the vocational expert's testimony and, therefore, the ALJ's analysis at Step 5 of the sequential process is not supported by substantial evidence. The Court is not persuaded.

The Fourth Circuit's decision in *Guiton v. Colvin*, 546 Fed. Appx. 137 (4th Cir., Nov. 7, 2013), is both instructive and persuasive. In that case, the court faced the same issue advanced by Plaintiff, a vocational expert relied on the DOT to identify jobs which a claimant could perform

14

consistent with his RFC, but relied on a different, more inclusive, source to estimate the number of such jobs which existed. *Id.* at 140-43. As the court recognized, "there is apparently no data, updated on a regular basis, available through either a public or private source, that reports numbers of jobs by DOT code number." *Id.* at 142. As the Court further recognized:

> if we required a VE to produce job statistics specific to the DOT-coded occupations a claimant can perform, it is unlikely that the Commissioner would *ever* succeed in satisfying her burden. This cannot be the result the regulations intend. Indeed, that the data Guiton requests does not exist "is a sign that [Guiton] expects too much," and like the Seventh Circuit, we decline to "impose impossible burdens on the VE."
>
> In this case, the VE cited the existence of 26,330 jobs in North Carolina and 825,000 jobs in the United States that Guiton could perform. Even assuming these numbers were overinclusive, far smaller figures would still suffice to satisfy the Commissioner's burden. We hold that the job numbers the VE provided, although perhaps somewhat imprecise, were sufficiently reliable to support the ALJ's conclusion.

*Id.* at 142-43 (internal citations omitted).

The Court first notes that while Plaintiff, by way of the vocational expert's testimony, has established that the DOT codes are a "subset" of the SOC codes, Plaintiff has presented no evidence that there exists a relevant or appreciable difference in the number of jobs which exist under the DOT and SOC codes in question.[4] Moreover, even if the Court assumes that there exists appreciable dissymmetry between the number of jobs which exist under the subject DOT and SOC codes, Plaintiff still falls short. As noted above, the vocational expert testified in this matter that there existed approximately 249,000 in the national economy which an individual with Plaintiff's

---

[4] The Court recognizes that Plaintiff's attempts to explore this issue at the administrative hearing were thwarted by the ALJ. (PageID.87). However, such did not prevent Plaintiff from introducing such evidence in this Court.

RFC could perform, such limitations notwithstanding. While this estimation may be somewhat imprecise, Plaintiff has failed to demonstrate that such imprecision either calls into question the ALJ's reliance on the vocational expert's testimony or results in a less than significant number of jobs which she can perform consistent with her RFC. Thus, the Court finds no error in the fact that the vocational expert relied on the DOT to identify jobs which Plaintiff could perform and relied on the SOC to estimate how many such jobs existed.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date:  July 10, 2017 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge